PLOTKIN, Judge.
Defendant Beverly Crow Stromme appeals a trial court judgment denying her request for reimbursement of half of $81,-628, which she alleges was the total of her separate funds used to renovate a community-owned residence. We affirm in part and reverse in part.

Facts

Both parties agree that the community purchased the subject residence to be used as a home for the wife and children after the parties separated, but during the existence of the community. At the time of the purchase, both parties knew that extensive renovations to the property would be required; they estimated the cost of the renovations at $32,000. For purposes of making those renovations, two checks to-talling that amount, one for $20,0000 and one for $12,000, were deposited into checking and savings accounts which were in Mrs. Stromme’s name. Mrs. Stromme testified that she placed one check into each account.
Sometime during the renovation period, Mrs. Stromme’s father died. Mrs. Stromme claims that she eventually spent both the $32,000 of community funds and $81,628 of separate funds to renovate the property. Mrs. Stromme claims that all the renovations were necessary to obtain a refinancing of the mortgage on the home and to prevent foreclosure. She claims that the separate funds included checks she wrote directly on a bank account in her name and her father’s name on a bank in Broken Arrow, Oklahoma. Also included in the separate funds were amounts she transferred into her local checking account from her father’s account in Broken Arrow after his death, as well as proceeds from his life insurance policies.
In denying the claim for reimbursement, the trial court stated in oral reasons for judgment that the husband should not be required to pay half of the money for two reasons: (1) because the parties never intended for the husband to live in the house, and (2) because the husband did not participate in the renovation decisions. Although we agree , with Mrs. Stromme’s argument that the reasons stated by the trial judgment are immaterial in determining her right to reimbursement, we find the trial court judgment was nonetheless correct for the reasons discussed below.

Burden of proof in reimbursement action

La.C.C. art. 2367 provides, in pertinent part, as follows:
If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled to one-half of the amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
The parties agree that the only requirements nécessary to establish a prima facie case for reimbursement are proof (1) that separate funds were used for the benefit of community property, and (2) that the community actually benefitted from the expenditure of the funds. Landwehr v. Landwehr, 547 So.2d 752 (La.App. 4th Cir.1989); Lentz v. Lentz, 411 So.2d 59 (La.App. 4th Cir.1981).
In the instant case, Mrs. Stromme presented Exhibit 5, a document purporting to establish the separate nature of $81,628 used for renovating the community property. The first page of that document indicates that a total of $104,752.89 was spent on the renovations. The document indicates that those funds came from three sources: (1) First National Bank, New Orleans, Account No. 2018-37676, $70,656.97; (2) First National Bank & Trust Account, Broken Arrow, Oklahoma, No. 31-04678, $33,699.56; and (3) cash, $396.36. The document indicates that her separate funds came from the following sources: (1) First National Bank & Trust Account No. 31- *311 04678, $83,699.56; (2) transfer funds from Broken Arrow Account No. 31-04676 into Account No. 2018-37676, $36,200; and (3) insurance from her father’s death deposited into First National Bank Account No. 2018-37676, $11,728.38. The remainder of the document lists checks written on the First National Bank account No. 2018-37676 and other checks written on First National Bank & Trust Co. 31-04678, Broken Arrow, Oklahoma. Further, the document lists the cash receipts, as well as the transfers of funds from the Broken Arrow Account No. 31-04676 into First National Bank accounts and the amounts of insurance checks.
Mrs. Stromme claims that the document described above is sufficient to meet her burden of proving that $81,628 of her separate funds were spent on renovating the community-owned residence. We disagree for two reasons.
First, the numbers simply do not add up. Mrs. Stromme claims that the total cost of the renovations was $104,752.89. Furthermore, she admits that $32,000 worth of community funds were used to make those renovations. The difference between those two sums is $72,752.89, not the $81,628 which Mrs. Stromme claims. Unquestionably, the largest amount of reimbursement to which Mrs. Stromme could be entitled is half of $72,752.89.
Second, Mrs. Stromme’s evidence, coupled with the testimony presented at trial, is insufficient to prove that any of the monies spent from the First National Bank, New Orleans, Account No. 2018-37676 were separate funds. Mrs. Stromme testified at trial that she opened that account sometime in 1989, unquestionably before the termination of the community. The fact that that account was opened in Mrs. Stromme’s name alone does not mean that the money in the account was separate property. In fact, under La. C.C. art. 2340, we must assume that the account was community property in the absence of evidence to the contrary.
Sometime after she opened the account, approximately $32,000 in community funds were placed into that account and a checking account[1] at the time the parties agreed to spend that amount to renovate the property. Mrs. Stromme then claims to have placed $36,200 from her father’s Broken Arrow checking account, as well as $11,-728.38 in insurance proceeds into that account. Some $70,656.97 worth of checks for the renovations were written on that account.
Even accepting all of the above as true, and giving the most liberal possible interpretation to the evidence presented by Mrs. Stromme, Exhibit 5 is insufficient to carry her burden of proving that she actually spent the $36,200 inherited from her father or the $11,728.38 in insurance proceeds for renovations to the house. The record contains no bank statements or copies of checks of any kind. Nothing in the record documents the balance of the checking account either at the time the $32,000 in community funds was deposited, or after all the renovations were finished. Mrs. Stromme testified that at the time of trial she possessed only a few thousand dollars from her inheritance which she wanted to save for emergencies. This evidence is simply insufficient to carry Mrs. Stromme’s burden of proof on those amounts of money. We affirm the trial court judgment denying reimbursement of those amounts.
The documents are, however, sufficient to prove that Mrs. Stromme spent $33,699.56 in checks written directly on her joint checking account with her father, First National Bank & Trust Co. Account No. 31-04678, Broken Arrow, Oklahoma, to renovate the house. The evidence concerning those checks is uncontroverted. We *312 find that Mrs. Stromme met her burden of proving that that amount of separate funds was used to renovate the community property.
Additionally, we find that Mrs. Stromme met her burden of proving that the expenditure of those separate funds benefitted the community. Mrs. Stromme’s testimony that all the renovations on the property were necessary to allow refinancing of the property and thereby to prevent foreclosure and the loss of the community’s investment in the property is uncontradicted. See Michel v. Michel, 484 So.2d 829, 831 (La.App. 1st Cir. 1986) (payments made to prevent foreclosure against community property benefit the community). Additionally, the record is clear that the renovations increased the appraised value of the house from $69,-000 to $115,000.

Conclusion

Accordingly, the trial court judgment denying Mrs. Stromme reimbursement for separate funds used to renovate community property is reversed. Mrs. Stromme is awarded one-half of $33,699.56, or $16,-849.78, in reimbursement. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.

. The parties testified that the $32,000 was represented by two checks, one for $20,000 and one for $12,000. Mrs. Stromme said that she initially placed one check in her checking account and one in her savings account. The documents submitted by Mrs. Stromme do not indicate that any of the monies for the renovations came from her savings account. Nonetheless, she is accountable to the community for that amount since the parties designated that amount of money for the renovations and that amount was unquestionably given to Mrs. Stromme for that purpose.