391 So.2d 1193 (1980)
Beulah Strother KENNEDY
v.
Thomas J. KENNEDY.
No. 11222.
Court of Appeal of Louisiana, Fourth Circuit.
August 12, 1980.
Rehearing Denied November 17, 1980.
Writ Refused January 16, 1981.
*1195 Calvin J. Laiche, Westwego, for plaintiff-appellee.
Parlongue & Riegel, Phillip R. Riegel, Jr., New Orleans, for defendant-appellant.
Before SAMUEL, BOUTALL and BARRY, JJ.
BARRY, Judge.
This matter began with a petition for partition of community property. The spouses were legally separated in July, 1968, which terminated the community, and divorced in January, 1971. The family home was not sold until November, 1977, and sale proceeds were deposited in the registry of the court pending the partition. Each party made various claims against the community for reimbursement. The trial judge rendered judgment (twice amended) granting claims to each separate estate for reimbursement against the community funds on deposit, as follows:

To Mr. Kennedy:
Attorney's fees $1,100.00
Premarital investment in home 2,000.00
Funds from boat sale in home 1,200.00
Recovery on auto insurance 200.00
Mortgage payments and repairs 1,594.31
 _________
 TOTAL $6,094.31
To Mrs. Kennedy:
Mortgage payments $12,913.95
House repairs 4,118.68
 __________
 TOTAL $17,032.63

Defendant husband raises four issues on appeal.
(1) Should the full amount of mortgage payments on the family home be reimbursed to a spouse occupying the home following dissolution of the community?
(2) and (3) Should repairs to the family home be reimbursed to a spouse occupying the home following dissolution of the community? Were the amounts for repairs reasonable?
(4) What equity, if any, does the community of acquets and gains have in a public pension fund where payments are made with community assets?

I.
The primary community asset was the matrimonial domicile which the wife occupied following the legal separation until its sale in November, 1977. Following the legal separation Mr. Kennedy made monthly payments for a brief time. Thereafter Mrs. Kennedy made the mortgage payments during her occupancy of approximately eight years.
The District Court awarded $12,913.95 which represents full reimbursement to Mrs. Kennedy for every mortgage payment she made following dissolution of the community while she occupied the former marital domicile up to the time of its sale. The trial judge cited deMonte v. McManus, 294 So.2d 605 (La.App. 4th Cir., 1974), as authority to award full reimbursement. In McManus, the community home was occupied at the time of trial by one of the spouses who was making monthly mortgage payments. The court deferred a determination of the amount due as reimbursement until mortgage payments ended when the property was sold. Judge Boutall adopted the language in Butler v. Butler, 228 So.2d 339 (La.App. 1st Cir., 1969) (similarly deferring judgment on amount owed pending sale and final payments) at page 343:
"He (referring to Mr. Butler) is entitled to credit for whatever he pays out in the way of payments and maintenance, ..." (emphasis added).
Admittedly, McManus and Butler do not specify the dollar amount of reimbursement to a spouse who has made monthly payments on behalf of property held jointly. But the language clearly indicates that full reimbursement would be made from community funds to the separate estate of a spouse who makes the mortgage payments.
Once the community of acquets and gains was terminated by the legal separation, and the husband and wife became co-owners, each had an obligation to maintain and preserve the property. Further, we have recognized that a co-owner has the right to use the common property without the obligation to pay rent. Arcemont v. *1196 Arcemont, 162 So.2d 813 (La.App. 4th Cir., 1964).
The husband was cognizant a mortgage existed on the community property. He made some payments and was awarded reimbursement. Unless timely payments continued then both spouses as co-owners would have been subject to financial loss by executory process. Monthly mortgage payments are certainly necessary expenditures when considering the preservation of the property. Either spouse herein, or any co-owner of realty, who is dissatisfied with the arrangement by which each has the right to use the common property without payment of rent is entitled to a partition. C.C.Art. 1289; Arcemont, supra; Loret v. Fugler, 71 So.2d 384 (La.App. 1st Cir., 1954).
We therefore conclude that the decision of the District Court was correct in awarding appellee wife full reimbursement for mortgage payments made after dissolution of the community of acquets and gains even though the wife occupied the property.
We do have difficulty in reconciling how the trial judge awarded reimbursement of $12,913.95. Our review of the voluminous exhibits (checks, temporary receipts, et cetera) in evidence provides the following breakdown:

Checks payable to homestead $ 8,244.72
Temporary homestead payment
receipts 1,570.37
Oral testimony - missing checks 2,026.52
Cash payments - temporary
receipts unavailable 414.28
 __________
 $12,255.89

We cannot explain the variance between our total and the calculations of the District Court. But obviously the trial judge was satisfied with the testimony of the appellee and intended to give her full credit for all payments. There is no evidence that the appellant made payments during this time and the wife's testimony that she made all payments is reasonable. We are limited to the record which reflects reimbursement for mortgage payments should be reduced to $12,255.89.

II. and III.
Mr. Kennedy challenges repairs of $4,118.68 made by his former wife during her occupancy. Appellant's opposition is grounded on the same argument set forth in his opposition to the mortgage payment reimbursement. He further argues that because the repairs were incurred subsequent to the dissolution of the community that they must either enhance the property value or were necessary for maintenance and were reasonable.
Apparently, the bulk of the repairs were made during the months preceding sale of the property. The right of the joint owner in possession to be reimbursed necessary expenses for the preservation of the community property is well settled. Arcemont, supra.
The trial judge heard all of the evidence pertaining to the necessity and reasonableness of the various repairs and he concluded that Mrs. Kennedy is entitled to full reimbursement. There is no convincing evidence the work performed was unnecessary or unreasonable. We find no abuse in the reimbursement to Mrs. Kennedy of $4,118.68 for the repairs.

IV.
The last issue before us concerns the divorced wife's interest in her former husband's pension rights which accrued through his employment during the existence of the community.
The trial court held that the wife's interest in the husband's pension rights was limited to "one-half the value of any benefits which may be due to Mr. Kennedy in proportion to that amount of benefits which may become due and which are attributable to the contributions made by the employer or employee-husband during the community, said benefits being as a result of a retirement plan formerly entered into between her former husband and his former employer."
During the marriage Mr. Kennedy was a member of the Firefighter's Pension and *1197 Relief Fund created by LSA-R.S. 33:2101. He contends that his equity in the plan is his separate property and relies upon LSA-R.S. 33:2120 which provides:
"The right of a person to a pension, an annuity, a retirement allowance, or to the return of contributions; the pension, annuity or retirement allowance itself; any optional benefit or any other right accrued or accruing to any person under the provisions of this Subpart; and the moneys in the various funds created by this Subpart are exempt from any state or municipal tax, all state income tax, and exempt from levy and sale, garnishment, attachment or any other process whatsoever, and shall be unassignable except as otherwise specifically provided in this Subpart. The fund shall be sacredly held, kept, and secured and distributed for the purpose of pensioning the persons named in this Subpart and for the payment of death benefits and for no other purpose whatsoever."
A review of the statutes governing the Firefighter's Pension and Relief Fund leaves the inescapable conclusion that the benefits conferred upon Mr. Kennedy are his separate and paraphernal property. Scott v. Scott, 179 So.2d 656 (La.App. 2nd Cir., 1965 (State Teachers' Retirement System)); Roberts v. Roberts, 325 So.2d 674 (La.App. 2nd Cir., 1976 (Louisiana State Employees' Retirement System)). Membership in these plans are necessarily restricted to a specific type of employment. Rights of members in these plans created by statute are exempted from judicial process, are unassignable, and not subject to any other process. LSA-R.S. 42:545.
Payments to Mr. Kennedy's pension plan were made with community funds and we hold that he is indebted to the community for all of the contributions made during the existence of the community. Scott v. Scott, supra; Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir., 1968); Moore v. Moore, 187 So.2d 145 (La.App. 2nd Cir., 1966), Writ denied, 249 La. 451, 187 So.2d 438 (1966).
This record does not reflect if contributions to the pension plan were made by the employer, but for further clarification, we hold that the husband's contributions and the matching contributions by his employer, if any, represent an asset acquired during the community. Sims v. Sims, 358 So.2d 919 (La.1978); T. L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976). Finally, we recognize the wife's right to claim one-half of the value of the increase to her husband's separate property if it be proved the increase occurred during the existence of the community. The community interest is not limited to the refund of community funds paid which generally are far less in monetary value than the pension rights acquired as a result of the employment of one spouse of the community. Our courts have uniformly held, except in a few isolated decisions, that at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit sharing plan or contract, if and when they become payable. The spouse's interest is recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community. Sims v. Sims, supra; T. L. James & Co., Inc. v. Montgomery, supra; Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956).
The record does not reflect the amount of contributions made to the pension plan during the existence of the community nor are we certain of Mr. Kennedy's current employment. This matter should be determined by the District Court and benefits, as specified above, calculated and an award made to the former spouse under the guidelines set out in Sims v. Sims, supra.
The District Court judgment is amended to reduce mortgage payments reimbursement to plaintiff-appellee to the amount of $12,255.89, and in all other respects affirmed. This matter is remanded to the District Court for a determination of Mrs. Kennedy's interest in any annuities, lump sum payments, or any other benefits paid or accrued from the Firefighter's Pension and *1198 Relief Fund to or for her husband, Thomas J. Kennedy. Defendant-appellant to pay all costs of this appeal.
AFFIRMED in part, AMENDED in part, and REMANDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Relator, Thomas J. Kennedy, has applied for a rehearing seeking a clarification relative to the community's claim for reimbursement of money paid to his Fire Fighter's Pension and Relief Fund. He contends the part of the decree directing the lower court on remand to follow the guidelines of Sims v. Sims, 358 So.2d 919 (La.1978), in determining the amount of reimbursement owed, contradicts our holding that the pension funds are his separate property.
Our opinion held that under our jurisprudence Mr. Kennedy's equity in the pension fund is his separate property, citing Scott v. Scott, 179 So.2d 656 (La.App. 2nd Cir. 1965); Roberts v. Roberts, 325 So.2d 674 (La.App. 2nd Cir. 1976). We affirm this conclusion.
However, the community is owed reimbursement for the contributions made to the fund during the marriage plus any increase in value which accrued on Mr. Kennedy's equity in the pension fund during the existence of the community: one-half of this total value is owed by Mr. Kennedy to Mrs. Kennedy. LSA-C.C. Art. 2408; Blalock v. Blalock, 259 So.2d 367 (La.App. 2nd Cir. 1972).
Though the issue of reimbursement was not before the Second Circuit in either the Scott or Roberts decisions, the Court did recognize, in dicta, the spouse's right to one-half the value of the increase, i. e., one-half of the amount on deposit which can be attributed to performance with the company during the community. Blalock, supra.
The Sims guidelines referred to in our decree provide a method to compute the non-member spouse's right to his/her one-half of the amount owed. This does not render the pension equity a community asset. The non-member spouse is entitled to reimbursement for contributions made to the fund from the community, plus reimbursement for any increase in value, including interest or contributions that may come from other sources, e. g., the employer. The community's equity in the pension fund should be reimbursable now as an offset in the pending partition.
REHEARING DENIED.